## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **GLENDA CERNA MORALES,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **EP-22-CV-00120-FM** |
| **JO ANNE B. BARNHART,** *Commissioner of the Social Security Administration,* | § § § | |
| **Defendant.** | § § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Before the court is "Report and Recommendation of the Magistrate Judge" [ECF No. 22], entered December 5, 2022, by Magistrate Judge Robert Castañeda, and "Plaintiff's Objections to Report and Recommendation" [ECF No. 23], filed December 7, 2022, by Glenda Cerna Morales ("Plaintiff"). For the following reasons the Report and Recommendation is **ADOPTED** and Plaintiff's non-disability determination is **AFFIRMED**.

## I.     BACKGROUND

Plaintiff applied for disability insurance benefits from the Social Security Administration ("SSA") in November 2019 based on arthritis, liver lesion, depression, anxiety, bilateral hand joint pain, swelling, and migratory rash.[1] In January 2020, Disability Determination Services ("DDS") doctors denied Plaintiff's initial application while finding, among other things, that Plaintiff was

---

[1] Record at 109.

moderately limited in her "ability to accept instructions and respond appropriately to criticism from supervisors."[2] Plaintiff's application was denied again on reconsideration.[3]

In March 2021, Nurse Practitioner Ricardo Gonzalez ("NP Gonzalez") examined Plaintiff and determined, among other things, that she was markedly and moderately limited in her ability to interact appropriately with supervisors and coworkers, respectively.[4]

The following month, an Administrative Law Judge ("ALJ") conducted a hearing on Plaintiff's application, during which he elicited testimony from a vocational expert ("VE").[5] He asked the VE whether sufficient jobs existed in the national economy for someone with a residual functional capacity ("RFC") that included certain physical and cognitive limitations as well as social limitations in interacting with the public.[6] He did not include social limitations in interacting with supervisors or coworkers.[7] The VE testified that sufficient jobs were available to someone with such an RFC.[8] Influenced in part by the VE's testimony, the ALJ issued a determination in May 2021 that Plaintiff was not disabled.[9] Plaintiff requested review of the ALJ's decision, which the SSA Appeals Council denied in December 2021.[10]

---

[2] *Id.* at 118.

[3] *Id.* at 122–33.

[4] *Id.* at 1129.

[5] *Id.* at 88–108.

[6] *Id.* at 106.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 30–53.

[10] *Id.* at 9–12.

Plaintiff filed suit in April 2022 against the Commissioner of the SSA ("Commissioner"), arguing the SSA's final decision was not supported by substantial evidence and was contrary to law and regulation.[11] The Magistrate Judge's report recommends the Commissioner's decision be affirmed.[12] Plaintiff objects to the entirety of that report, arguing the ALJ's RFC determination erroneously failed to account for her limited ability to appropriately interact with supervisors and coworkers.[13]

## II.   **APPLICABLE LAW**

In determining a claimant's disability, an ALJ proceeds through a five-step sequential process by assessing: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has any severe medically determinable impairments; (3) whether those impairments meet or exceed the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's impairments prevent them from performing past relevant work; and (5) whether their impairments prevent them from doing any other work.[14] Between steps three and four, if the claimant has not already been adjudged disabled, an ALJ determines the claimant's RFC.[15] An ALJ may elicit testimony from a VE in order to guide their findings at the

---

[11] "Complaint" 2, ECF No. 1, filed Apr. 7, 2022.

[12] *See generally* "Report and Recommendation of the Magistrate Judge" ("R&R"), ECF No. 22, entered Dec. 5, 2022.

[13] *See generally* Obj.

[14] 20 C.F.R. § 404.1520(a)(4).

[15] *Id.*

3

fourth and fifth steps. If the ALJ determines the claimant is not disabled, the claimant may appeal to the SSA Appeals Council.

"[W]hen the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's [] decision," which is a final decision for purposes of judicial review.[16] However, a court's review of the Commissioner's decision is limited to a determination of 1) whether the Commissioner's final decision is supported by substantial evidence on the record and 2) whether the Commissioner applied the proper legal standards.[17] Moreover, an erroneous ALJ decision will not be reversed if the error was harmless.[18] "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."[19]

## III. **DISCUSSION**

The Magistrate Judge recommends the Commissioner's decision be affirmed based on four findings. First, the ALJ sufficiently articulated the persuasiveness of NP Gonzalez's opinion.[20] Second, although the ALJ insufficiently explained the persuasiveness of DDS doctors' opinions, that error was harmless.[21] Third, the ALJ adequately considered Plaintiff's husband's insights and observations.[22] Finally, even if the ALJ erred in omitting from Plaintiff's RFC a limitation in interacting with supervisors and coworkers, that error was harmless since a VE testified that two jobs were available—marker and mailroom clerk—which other courts and ALJs have found

---

[16] *Higginbotham v. Barnhart*, 405 F.3d 332, 336–37 (5th Cir. 2005).

[17] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *see* 42 U.S.C. § 405(g).

[18] *Keel v. Saul*, 986 F.3d 551, 556–57 (5th Cir. 2021).

[19] *Id.* at 556.

[20] R&R at 6.

[21] *Id.* at 7.

[22] *Id.* at 9.

claimants could work even with an RFC that limits contact with supervisors and coworkers.[23] Plaintiff objects to each of these findings.[24]

The court addresses first the issue of whether the ALJ's alleged error in determining Plaintiff's RFC was harmless.[25] If it was, the court will not reverse.[26] Here, the ALJ's non-disability determination was based on two primary findings.[27] First, the ALJ found that Plaintiff's RFC included the "capacity to perform light exertion work" provided Plaintiff is shielded from pulmonary irritants, tasked with only simple instructions, and only occasionally required to interact with the public or adapt to changes.[28] Second, a VE testified that someone with Plaintiff's background and RFC would be able to perform occupations such as marker, mailroom clerk, and office helper, all of which exist in significant numbers in the national economy.[29] Plaintiff argues the RFC, and therefore VE testimony and the ALJ's ultimate no-disability determination, did not adequately account for her social limitations.[30]

---

[23] *Id.* at 9–10.

[24] *See generally* Obj.

[25] *See Keel*, 986 F.3d at 556 ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err.").

[26] *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (declining to reach the merits of the claimant's arguments since, "even if the ALJ made any error, the error would be harmless.").

[27] Record at 53.

[28] *Id.* at 44.

[29] *Id.* at 52.

[30] Obj. at 9.

Plaintiff suffers from depression and anxiety.[31] As a result, DDS doctors found she was moderately limited in her ability to respond appropriately to supervisor criticism.[32] NP Gonzalez, meanwhile, found Plaintiff was markedly limited in her ability to interact appropriately with supervisors and moderately limited in her ability to do so with coworkers.[33] Yet the ALJ failed to include in the RFC any limitations regarding interactions with supervisors or coworkers.[34] Assuming, *arguendo*, that the ALJ's RFC determination was erroneous, the question then is whether Plaintiff has shown it was harmful; i.e., whether an ALJ could conceivably conclude that Plaintiff was disabled had her RFC reflected limitations in interacting with supervisors and coworkers.[35]

The court finds such an outcome inconceivable and, therefore, any error by the ALJ in finding Plaintiff not disabled was harmless. There are two ways an ALJ may conclude a claimant was disabled. At the third step of the five-step sequential process, an ALJ must determine whether the claimant's impairment met or exceeded the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[36] If the impairment did, the claimant is disabled.[37] Here, for Plaintiff's depression or anxiety to meet the severity requirements of Appendix 1, those impairments must

---

[31] Report at 38.

[32] *Id.* at 118.

[33] *Id.* at 19.

[34] *See id.* at 44.

[35] *See Keel*, 986 F.3d at 556 ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.").

[36] 20 C.F.R. § 404.1520(a)(4)(iii).

[37] *Id.* at subsec. (d).

have resulted in, among other things, one "extreme" limitation or two "marked" limitations in her abilities to: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; or 4) adapt or manage herself.[38] DDS doctors found Plaintiff's limitations were moderate in each category.[39] Thus, even if the ALJ adopted NP Gonzalez's determination that Plaintiff had a *marked* limitation in her ability to interact with supervisors[40] and therefore found she had a marked limitation in her ability to "interact with others" more broadly, Plaintiff's impairment still would not have met the requirements of Appendix 1 since she would have had only three moderate limitations and one marked limitation.

The second way a claimant can be adjudged disabled is after an ALJ determines that not enough jobs exist in the national economy that the claimant could perform based on the claimant's background and RFC.[41] Here, after considering VE testimony, the ALJ found based on Plaintiff's age (43), marginal education, and RFC that she was not disabled. Plaintiff's RFC reflected moderate limitations in her cognitive and social abilities, including her abilities to perform simple instructions, interact with the public, and adapt to changes.[42] Plaintiff asserts the RFC should also have reflected at least some limitations in her ability to interact with supervisors and coworkers.[43]

However, Plaintiff has not shown that such a failure was harmful.[44] First, she offers no example—nor is the court aware of any—where an ALJ found a claimant disabled whose

---

[38] 20 C.F.R. Pt. 404, Subpt. P, App. 1, subsec. 112.04 and 112.06.

[39] Record at 113.

[40] *Id.* at 1129.

[41] 20 C.F.R. § 404.1520(a)(4)(v).

[42] Record at 44.

[43] Obj. at 8–9.

[44] *See Shinseki*, 556 U.S. at 409; *Jones*, 691 F.3d at 734–35.

background and RFC were similar to Plaintiff's with the additional restriction that their RFC reflected at least moderate limitations in interacting with coworkers and supervisors. On the contrary, ALJs routinely find that a claimant is *not* disabled under such circumstances, which courts in this circuit routinely uphold.[45]

Second, irrespective of caselaw, she offers no plausible theory for how including supervisor and coworker social limitations in the RFC would have changed the outcome here, and therefore why failure to do so was harmful. The few arguments she does offer are thoroughly unconvincing. She points out that, according to SSA policy, "basic mental demands of competitive unskilled work . . . include the ability to respond appropriately to supervision [and] coworkers."[46] But no medical opinion found Plaintiff *un*able to respond appropriately to supervisors or coworkers. Rather, the medical evidence shows she *can* respond appropriately, albeit with limitations.

Plaintiff also argues that the court, by allowing the ALJ's purported error to stand, is itself causing harm because it would mean the court is 1) acting as factfinder and 2) allowing the ALJ to flout procedural requirements.[47] The court is not fact-finding, however, since it is not determining whether Plaintiff is in fact limited in her ability to interact with supervisors and coworkers or to what degree such limitations are work preclusive. Rather, the court is merely

---

[45] *See, e.g., Herring v. Astrue*, 788 F.Supp.2d 513, 514, 523 (N.D. Tex. 2011); *Coscarelli v. Saul*, No. SA-19-CA-1219-XR, 2021 WL 8053621, at *3 (W.D. Tex. Jan. 29, 2021); *Maldonado v. Barnhart*, No. SA-05-CA-0468 RF, 2006 WL 2411521, at *9–10 (W.D. Tex. Aug. 19, 2006); *Marine v. Astrue*, No. SA-09-CV-0836 XR (NN), 2011 WL 13324310, at * 4 (W.D. Tex. Jan. 7, 2011), *adopted by* No. SA-09-CA-836-XR, 2011 WL 13324317 (W.D. Tex. Jan. 25, 2011); *Ochoa v. Barnhart*, No. Civ.A. SA04CA0888RFN, 2005 WL 2708809, at *4 (W.D. Tex. Oct. 17, 2005), *adopted by* No. SA-04-CA-0888-RF, 2008 WL 509096 (W.D. Tex. Feb. 22, 2006); *Williams v. Astrue*, No. SA-06-CV-1120 OG (NN), 2007 WL 2727122, at *3, 5 (W.D. Tex. Sept. 14, 2007), *aff'd*, No. 07-51282, 271 Fed.App'x. 393 (5th Cir. Mar. 25, 2008).

[46] Obj. at 4, 6.

[47] *Id.* at 9.

applying harmless error analysis, which is a legal standard. Nor is permitting an error to go uncorrected inherently harmful. On the contrary, the harmless error standard presumes errors will occur that nevertheless are permitted to stand by virtue of their harmlessness.

Finally, Plaintiff twists *Boyd v. Apfel* for the proposition that, when a hypothetical question posed to a VE "is defective due to the ALJ's failure to *accurately portray* a claimant's physical and mental impairments," a non-disability determination based on the answer to that question "is not supported by substantial evidence, and cannot stand."[48] But that is not the standard in the Fifth Circuit. Rather, for a non-disability determination to stand, 1) hypothetical questions posed to a VE by an ALJ must reasonably incorporate "all disabilities of the claimant *recognized by the ALJ*" and 2) the claimant (or their representative) must have the opportunity to correct purported deficiencies in the question by bringing them to the attention of the VE.[49] Here, the ALJ incorporated into his question those disabilities that he had recognized, and Plaintiff's attorney was given the opportunity to subsequently examine the VE.[50] Therefore, there was no reversible error under *Boyd*.

Because the ALJ did not commit any harmful errors, the court need not address Plaintiff's additional objections to the Magistrate Judge's report and recommendation.

## IV.   **CONCLUSION**

For the foregoing reasons, the Report and Recommendation is **HEREBY ADOPTED** and Plaintiff's non-disability determination is **AFFIRMED**.

The Clerk of Court is **INSTRUCTED** to **CLOSE** this case.

---

[48] *Id.* at 10 (citing *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001)) (emphasis added).

[49] *Boyd*, 239 F.3d at 707 (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)) (emphasis added).

[50] Record at 106–07.

**SIGNED AND ENTERED** this _23_ day of **March 2023.**

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**